## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**JOHN DANIEL, ET AL.**                                   **CIVIL ACTION NO.**

**VERSUS**                                                **24-444-SDD-EWD**

**BIOMET ORTHOPEDICS, INC., ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**JOHN DANIEL, ET AL.**                                    CIVIL ACTION NO.

**VERSUS**                                                            24-444-SDD-EWD

**BIOMET ORTHOPEDICS, INC., ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion for Remand ("Motion"),[1] filed by John G. Daniel ("John") and Lynnita Daniel ("Lynnita") (collectively, "Plaintiffs"), which argues for return of this case to state court because this Court lacks diversity jurisdiction due to the joinder of non-diverse defendant, Pathology Group of Louisiana ("PGL"). The Motion is opposed by Defendants Biomet Orthopedics, LLC, Zimmer Biomet Holdings, Inc., Zimmer US, Inc., and Zimmer, Inc. (together "Defendants").[2] The matter is fully briefed and oral argument is not necessary.[3]

Because Defendants have met their "heavy burden" to show that non-diverse party PGL was improperly joined, it is recommended[4] that the Motion be denied, and that Plaintiffs' claims against PGL, and PGL's employee, John Doe, be dismissed without prejudice. It is further recommended that the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Motion to

---

[1] R. Doc. 20.

[2] R. Doc. 22. The Response in Opposition to Plaintiffs' Motion for Remand says it was filed by "Biomet Orthopedics, Inc." and the rest of Defendants; however, that name appears to be incorrect because the matter was removed by Biomet Orthopedics LLC (which claims to have been formerly named "Biomet Orthopedics, Inc"). *Compare* R. Doc. 22, p. 1 with R. Doc. 1, introductory paragraph.

[3] Oral argument is discretionary. Local Civil Rule 78(b).

[4] *See, e.g.*, *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.").

Dismiss"),[5] filed by PGL, be terminated as moot, because the Motion to Dismiss requests PGL's dismissal on the same grounds as those recommended in this Report.

## I.    BACKGROUND

This is an action for damages based on claims of products liability and intentional spoliation of evidence under Louisiana law.[6]   On January 31, 2024, Plaintiffs filed their Petition for Damages ("Petition") against Defendants, PGL, and John Doe, in Louisiana state court.[7]   The Petition alleges that John underwent a left total hip arthroplasty in 2009 at Our Lady of the Lake Regional Medical Center in Baton Rouge, where he had an orthopedic hip replacement device implanted that was manufactured by Biomet Orthopedics, Inc. Plaintiffs allege that the device was defective, resulting in injuries to John and a hip revision surgery in 2023.[8]   Specifically, Plaintiffs claim that the defective device was unreasonably dangerous for its intended use in violation of the Louisiana Products Liability Act, La. R.S. § 9:2800.51, *et. seq.*[9]   The Petition further alleges that, after John's revision surgery was performed, the device was given to PGL with express instructions to preserve it. However, PGL's employee, Defendant Doe, discarded the device. Plaintiffs contend

---

[5] R. Doc. 7.

[6] R. Doc. 1-2, pp. 6-10 (Petition for Damages).

[7] R. Doc. 1-2, pp. 6-7, ¶ 1. Though not listed in the caption, the Petition also alleges claims against "ABC Insurance Company" at R. Doc. 1-2, p. 9, ¶ 10 and at *id.,* p. 10 in the prayer for damages.

[8] R. Doc. 1-2, pp. 7-9, ¶¶ 2-7, 12.  The device is described as: "a M2a 38mm Flared One Piece Cup *(Ref 15-105054, Lot No 284030),* Alliance(R)X-Series 13mm x145mrn Collarless Bi-Metric Porous Stem *(Ref X180313, Lot No 560360)* and a M2a 38mm Modular Head Component *(Ref 11-173662, Lot No 759770)*…." R. Doc. 1-2, p. 7, ¶ 3 (emphasis in original).  Plaintiffs allege that, following surgery, John began experiencing symptoms such as a persistent cough, shortness of breath, chest pain, wheezing, and ultimately, pain in his leg. John was diagnosed with sarcoidosis.  After testing in 2023, John learned that cobalt and chromium were leaking into his bloodstream from the device resulting in metallosis, which was the cause of his symptoms and pain. R. Doc. 1-2, p. 7, ¶ 4.

[9] R. Doc. 1-2, p. 8, ¶¶ 6-7.

this act was an intentional spoilation of evidence by PGL, who is vicariously liable for Doe's actions pursuant to the doctrine of *respondeat superior*.[10]

On June 5, 2024, Biomet Orthopedics, LLC ("Biomet") and the other Defendants removed the matter to this Court asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332.[11] The Notice of Removal adequately alleged that Plaintiffs are Louisiana citizens, and that Zimmer Biomet Holdings, Inc., Zimmer US Inc., and Zimmer Inc. are all Delaware corporations with their principal places of business in Indiana, but failed to adequately allege the citizenship of Biomet.[12] Defendants also contended that PGL, a Louisiana citizen who is non-diverse from Plaintiffs, was improperly joined.[13]  On June 17, 2024, a briefing Order was issued, ordering Defendants to file an amended Notice of Removal that adequately alleged the citizenship of Biomet, and to provide a memorandum and additional evidence of the amount in controversy.[14] Because Defendants

---

[10] R. Doc. 1-2, pp. 7-9, ¶¶ 5, 8, 11. Plaintiffs seek damages, including lost wages and past medical expenses, and for Lynnita's loss of consortium.  R. Doc. 1-2, pp. 9-10, ¶¶ 12-14.

[11] R. Doc. 1, introductory paragraph and ¶ 2.  No other basis for federal jurisdiction has been alleged, and none is apparent.

[12] R. Doc. 1, ¶¶ 10-14 and *see* R. Doc. 1-2, p. 6, introductory paragraph (alleging Plaintiffs' Louisiana domicile).  The citizenships of fictious defendants, John Doe and ABC Insurance Company, are disregarded per 28 U.S.C. 1441(b). *Id.* at ¶ 16.

[13] R. Doc. 1 at ¶¶ 5, 17 ("The only Defendant with Louisiana citizenship in Plaintiff's Complaint is Pathology Group (and John Doe if he or she were added to the case)…."), and *id.* at ¶¶ 20, 26, 31. *See also id.* at ¶ 17, n. 3 (Doe is "believed to be a Parish of East Baton Rouge resident," and also improperly joined). *See also* R. Doc. 1-2, p. 6, ¶ 1(E) (Petition, (inadequately) alleging PGL's citizenship to be a "domestic corporation, domiciled at …. Baton Rouge, Louisiana") and *see* R. Doc. 1-2, p. 7(F) (Petition inadequately alleging Doe is a Louisiana resident). Though Doe's citizenship is not required to be considered, Defendants also contend that the arguments for why PGL is an improper defendant extend to Doe, PGL's employee.  R. Doc. 1, p. 5, n. 3.

[14] Defendants were ordered to address the amount in controversy because it was not adequately established in the Notice of Removal that Plaintiffs' damages are likely to exceed $75,000, exclusive of interest and costs as Defendants solely relied on the allegations of John's surgery, treatment, and a boilerplate listing of damages. *See* R. Doc. 9. Defendants were also ordered to correct the case caption, which named an entity that is not a party to this case.  R. Doc. 9 and *see* R. Doc. 1, p. 1.  In response to the briefing Order, Defendants filed their Memorandum Regarding the Amount in Controversy ("Memorandum"), which provided additional argument, as well as documents from a Judicial Panel on Multidistrict Litigation proceeding involving a similar device. R. Docs. 12 through 12-2 (citing *In Re Biomet M2a Magnum Hip Implant Products Liability Litigation* (MDL 2391), No. 12-2391(N.D. Ind.)).  Although the parties cannot confer jurisdiction by agreement, Plaintiffs agree that the requisite amount in controversy is met.  R. Doc. 20-1, p. 6, R. Doc. 22, p. 1, and *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007) (citations omitted). In *Dunn v. Marquette Transportation Co., LLC*, No. 16-13545, 2017 WL 3887521, at *11 (E.D. La. Sept. 6,

claimed in the Notice of Removal that PGL was improperly joined on two grounds, *i.e.*, "(i) Plaintiffs cannot bring a spoliation cause of action until the underlying case is resolved, and (ii) Plaintiffs have not met the requirements of the Louisiana Medical Malpractice Act ["LMMA"],"[15] Plaintiffs were ordered to file either a motion to remand, if they believed they had a reasonable likelihood of recovery against PGL, or an amended complaint deleting all claims against PGL, if Plaintiffs agreed that PGL was improperly joined.[16]

In response to the briefing Order, Defendants filed an amended Notice of Removal that adequately alleged the citizenship of Biomet,[17] and thus established that Plaintiffs have diverse citizenship from all Defendants whose citizenship is properly considered. Defendants re-asserted the same two grounds for improper joinder of PGL (and Doe), *i.e.*, Plaintiffs' spoliation claim is not yet ripe because the underlying claim is not resolved, and the requirements of the LMMA have not been exhausted.[18]

As to the improper joinder of non-diverse Defendant PGL, Plaintiffs filed the current Motion, seeking remand on the grounds that diversity jurisdiction does not exist because PGL is

---

2017), aff'd sub nom., *Dunn v. Marquette Transportation Co., L.L.C.*, 744 Fed.Appx. 888 (5th Cir. 2018), the U.S. District Court for the Eastern District of Louisiana noted that, per testimony of an expert, the cost of a hip revision surgery in 2018 was $78,973. While the cost of John's May 9, 2023 hip revision surgery, which Plaintiffs allege was necessary because of the defective device, is not in the record, per *Dunn*, the medical expenses for that surgery alone likely exceed the jurisdictional minimum.

[15] R. Doc. 1, pp. 5-9. *See* La. R.S. § 40:1231.1, *et seq.*, which requires that Plaintiffs submit medical malpractice claims, as defined by the LMMA, to a medical review panel before filing suit. La. R.S. § 40:1231.8(B)(1)(a)(i).

[16] R. Doc. 9.

[17] R. Doc. 19, ¶ 12 (alleging that Biomet ultimately unwinds to one member, its co-Defendant Zimmer US Inc., which is a Delaware corporation with its principal place of business in Indiana).

[18] R. Doc. 19, pp. 6-9. Defendants again contend that the arguments for why PGL is an improper defendant extend to Doe, PGL's employee. R. Doc. 19, p. 5, n. 3.

properly joined. Defendants oppose the Motion.[19]  The sole issue before the Court is whether PGL

(and Doe) are properly joined defendants.[20]

## II.    LAW AND ANALYSIS

### A.  Legal Standards as to Subject Matter Jurisdiction and Improper Joinder

"Federal courts are courts of limited jurisdiction…It is to be presumed that a cause lies

outside this limited jurisdiction…."[21] "Pursuant to 28 U.S.C. § 1332(a), this court has original

jurisdiction "of all civil actions where (1) the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and (2) is between citizens of different States."[22] "The

removing party has the burden of proving federal diversity jurisdiction.[23] Remand is proper if at

any time the court lacks subject matter jurisdiction.[24] The removal statute is strictly construed and

any doubt as to the propriety of removal should be resolved in favor of remand.[25]

The improper joinder doctrine is a narrow exception to the rule of complete diversity.[26] If

a non-diverse defendant is improperly joined, a district court can disregard the citizenship of that

---

[19] R. Docs. 20, 22.

[20] Approximately one month before the Motion was filed, PGL filed its Motion to Dismiss, seeking dismissal of Plaintiffs' claims against it on two grounds.  First, Plaintiffs' claim against PGL is governed by the LMMA, which requires a review panel to render an expert opinion on Plaintiffs' claim, and thus Plaintiffs' claim against PGL here is premature. (This ground was similarly alleged in the Notice of Removal as a basis for improper joinder.) Second, PGL argues that Plaintiffs failed to allege the requisite elements of a claim of intentional spoilation, and also argues that Plaintiffs' request for an LMMA panel against PGL necessarily presumes the assertion of a negligence claim against PGL under the LMMA, which precludes Plaintiffs from contemporaneously asserting that PGL intentionally spoiled evidence. R. Doc. 7.

[21] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).

[22] *Williams v. Biomet Orthopedics, LLC,* No. 16-795, 2017 WL 3713529, at *2 (M.D. La. Mar. 31, 2017), report and recommendation adopted, No. 16-795, 2017 WL 4176480 (M.D. La. Sept. 21, 2017).

[23] *Garcia v. Koch Oil Co. of Texas Inc*., 351 F.3d 636, 638 (5th Cir. 2003).

[24] *See* 28 U.S.C. § 1447(c).

[25] *Gasch,*, 491 F.3d at 281-82.

[26] *McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005).

defendant for the purposes of evaluating its jurisdiction.[27]   "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."[28]   In *Smallwood*, the seminal decision of the Fifth Circuit on this issue, the Court "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[29]   Here, there has been no allegation of fraud in the pleading of jurisdictional facts.   Rather, Defendants specifically argue improper joinder under the second method, *i.e.*, that Plaintiffs are unable to establish a cause of action against PGL.[30]   Therefore, the question is whether Defendants have shown "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[31]   A court may resolve the issue of whether a plaintiff has a reasonable basis of recovery under state law in one of two ways.   "The court may conduct a Rule 12(b)(6) analysis, looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[32]   "That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but

---

[27] *Williams v. Homeland Ins. Co. of New York,* 18 F.4th 806, 812 (5th Cir. 2021), citing *Flagg v. Stryker Corp.,* 819 F.3d 132, 137 (5th Cir. 2016).

[28] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*).

[29] *Smallwood*, 385 F.3d at 573, quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003).

[30] R. Doc. 19, ¶¶ 18-19.  Plaintiffs agree the joinder inquiry is governed by the second method.  R. Doc. 20-1, p. 5.

[31] *Smallwood,* 385 F.3d at 573.  *See also Williams,* 18 F.4th at 812 ("We typically evaluate this question by evaluating whether the plaintiff had any possibility of recovery against the non-diverse defendant in state court at the time of removal.") (citations omitted) and *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999) ("To establish that a non-diverse defendant has been [improperly] joined to defeat diversity jurisdiction, the removing party must prove ... that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the [in-state] defendant.").

[32] *Smallwood*, 385 F.3d at 573.

has misstated or omitted discrete facts that would determine the propriety of joinder.  In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[33]  If the plaintiff cannot survive the Rule 12(b)(6) challenge, the claims against the improperly joined defendant should be dismissed without prejudice.[34]

### B.  Arguments of the Parties

Plaintiffs' Petition specifically asserts that the defective device manufactured by Defendants was removed during John's May 2023 hip revision surgery, and was placed in the custody of PGL with specific instructions for PGL to preserve it.[35] However, the device was allegedly discarded by PGL's employee, Doe. The Petition alleges that PGL is vicariously liable for intentional spoliation of evidence due to Doe's actions, as follows:

8.

> …plaintiffs allege the liability under the evidentiary theory of spoliation of defendant PATHOLOGY GROUP OF LOUISIANA (A PROFESSIONAL MEDICAL CORPORATION), through its as yet unidentified employee, JOHN DOE, to be more specifically identified through discovery, in the following, non-exclusive respects:
> 1. Intentionally discarding the subject prosthesis;
> 2. Intentional failure to follow the specific instructions of a treating physician as to the handling of the explanted prosthesis;
> 3. Failure to properly supervise its employee;
> 4. Failure to properly train its employee;
> 5. Failure, generally, to act in a manner commensurate with the above described situation.[36]
>
> …

---

[33] *Id.*

[34] *See Montoya v. State Farm Mut. Auto. Ins. Co.*, No. 16-5, 2016 WL 5942327, at *3 (W.D. Tex. Oct. 12, 2016), citing *Int'l Energy Ventures Mgt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) ("When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice.").

[35] R. Doc. 1-2, pp. 7-8, ¶ 5 and *see* R. Doc. 13-1, p. 3 (5/9/23 medical record of hip revision surgery noting "*KEEP & DO NOT DISCARD—GOING BACK to PATIENT*").

[36] R. Doc. 1-2, pp. 7-9, ¶¶ 5, 8, 11.

11.

> At the time of the incident sued on, defendant JOHN DOE, was acting in the course and scope of his/her employment with defendant, PATHOLOGY GROUP OF LOUISIANA (A PROFESSIONAL MEDICAL CORPORATION), which defendant is vicariously liable under the doctrine of respondeat superior for the acts of its employee.

Plaintiffs contend that removal was improper because PGL is not diverse from Plaintiffs and PGL is an indispensable party.[37]  Plaintiffs assert two grounds in support of remand, only one of which need be reached.[38]  The question before the Court is whether Plaintiffs' claims against PGL are covered by the LMMA, and are therefore required to be submitted to a medical review panel before Plaintiffs can bring suit against PGL.[39]  If the claim against PGL is covered by the LMMA, as Defendants (and PGL) contend, then Plaintiffs' claim is premature; PGL is improperly joined and must be dismissed; diversity will then exist among the remaining parties; and remand should be denied.

Plaintiffs acknowledge that Louisiana law applies in this diversity action but assert that the LMMA does not apply to their claims against PGL. Plaintiffs argue that the LMMA has been held to "**only and strictly**" apply to cases of medical malpractice as defined by the LMMA. Further, "the LMMA's limitations on such liability were created by special legislation in derogation of the general rights of Louisiana tort victims," and "**all other tort liability**" on the part of the qualified

---

[37] R. Doc. 20-1, p. 4 (Plaintiffs' Memorandum in support of the Motion, incorporating and re-urging Plaintiffs' arguments asserted in their Opposition to the Motion to Dismiss at R. Doc. 13).

[38] Plaintiffs' second argument in support of remand (and against dismissal of PGL) is that their intentional spoliation claim against PGL is ripe and can be raised now, and thus PGL is properly joined, which destroys diversity. R. Docs. 13, pp. 10-15 and R. Doc. 20-1, pp. 4-6.  In response, Defendants contend that Plaintiffs have failed to state a claim for intentional spoliation of evidence against PGL, which is therefore improperly joined, because the claim is not ripe until judgment is reached on Plaintiffs' products liability claim against Defendants in this proceeding. R. Doc. 22. This second argument is not reached because, as set forth in this Report, Plaintiffs' claims against PGL are covered by the LMMA, and Plaintiffs are required to exhaust their administrative remedies under the LMMA before bringing their claims against PGL in court.

[39] R. Doc. 20-1, p. 4 ("Plaintiffs assert that the cause of action alleged in this litigation against PGL clearly falls outside the ambit of the Louisiana Medical Malpractice Act and that the claims against PGL are indeed ripe for adjudication.").

health care provider is governed by general tort law."[40]  According to Plaintiffs, Defendants cannot

show that Plaintiffs' claims against PGL arise out of "malpractice," which is defined as:

> "Malpractice" means any **<u>unintentional</u>** tort or any breach of
> contract **<u>based on health care</u>** or professional services rendered, or
> which should have been rendered, by a health care provider, **<u>to a
> patient</u>**, including failure to render services timely and the handling
> of a patient, including loading and unloading of a patient, and also
> includes all legal responsibility of a health care provider arising
> from acts or omissions during the procurement of blood or blood
> components, in the training or supervision of health care providers,
> or from defects in blood, tissue, transplants, drugs, and medicines,
> **<u>or from defects in or failures of prosthetic devices implanted in
> or used on or in the person of a patient</u>**.[41]

Plaintiffs also contend that Defendants cannot show that Plaintiffs' claims involve "health care or

professional services rendered, or which should have been rendered by a health care provider,"

under the LMMA's definition of "health care":

> "Health care" means any act or treatment performed or furnished, or
> which should have been performed or furnished, by any health care
> provider for, to, or on behalf of a patient **<u>during</u>** the patient's
> medical care, treatment, or confinement, or during or relating to or
> in connection with the procurement of human blood or blood
> components.[42]

Plaintiffs argue that they have established a valid cause of action against PGL that is not subject

to the LMMA because they alleged in their Petition that PGL acted intentionally, *i.e.*, with the

conscious desire for the physical result of the act or with the knowledge that the result was

substantially certain to follow, in discarding the device.[43]  Next, PGL's discarding of the device,

which was no longer in John's body, "had nothing to do with 'health care' being provided 'during'

---

[40] *See* R. Doc. 13, pp. 6-7, citing *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 2007-0008 (La. 09/05/07), 966 So.2d 519, 521 & 524 (emphasis added by Plaintiffs).

[41] R. Doc. 13, p. 7, citing La. R.S. § 40:1231.1(A)(13) (emphasis added by Plaintiffs).

[42] R. Doc. 13, p. 7, citing La. R.S. § 40:1231.1(A)(9) (emphasis added by Plaintiffs).

[43] R. Doc. 13, p. 8, citing R. Doc. 1-2, pp. 7-8, ¶¶ 5, 8(1), and 8(2) [and *see* ¶ 9 (alleging that the LMMA does not apply to Plaintiffs' claims against PGL], and citing *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981).

[John's] treatment;" rather, the device was removed during the May 9, 2023 surgery, was left in PGL's care and custody after the surgery, was reviewed in a pathology report 2 days later, and thereafter went missing. Plaintiffs contend that "health care" was no longer being provided to John when the device was discarded.[44] Third, to the extent the LMMA applies to claims for defects or failures of prosthetic devices, Plaintiffs argue that provision applies to devices while they are "implanted in or used" by the patient, which is not applicable here because Plaintiffs' claim involves the handling of the device after it was "explanted" from John.[45]

Plaintiffs additionally contend that some Louisiana state courts have found that tort-based causes of action against health care providers do not fall within the scope of the LMMA.[46] Plaintiffs also argue that four of the factors handed down by the Louisiana Supreme Court in *Coleman v. Deno,*[47] for consideration of whether a claim is medical malpractice, weigh in favor of a finding that their claim is not one for medical malpractice based on the arguments asserted above, *i.e.*, (1) whether the particular wrong is treatment related, (2) whether the wrong required expert medical evidence to determine whether the appropriate standard of care was breached, (3) whether the acts or omissions involved assessment of the patient's condition, (4) whether the incident occurred in the context of a physician-patient relationship.[48]

---

[44] R. Doc. 13, p. 8, citing R. Doc. 13-1, p. 1 (5/11/23 Surgical Pathology Report by PGL describing "Left hip, pseudotumor, resection:" and "Left femoral head," and noting collection date of 5/9/23).

[45] R. Doc. 13, p. 8, citing La. R.S. § 40:1231.1(A)(13).

[46] R. Doc. 13, p. 9, citing *LaCoste*, 966 So.2d 519 (holding that wrongful death claim arising out failure of hospital to have emergency and evacuation plans for loss of electricity due to hurricane resulting in death of patient on life support was not medical malpractice covered by the LMMA) and *Rivera v. Bolden's Transp. Serv.*, 2011-1669 (La.App. 1 Cir. 06/28/12), 97 So.3d 1096 (holding that nursing home's negligence in failing to provide a wheelchair with a seatbelt to a resident injured from falling out of the wheelchair during a van transport was not medical malpractice covered by the LMMA).

[47] *Coleman,* 2001-1517 (La. 1/25/02), 813 So.2d 303.

[48] R. Doc. 13, p. 9, citing *Coleman*, 813 So.2d 303, and noting a fifth *Coleman* factor—whether the injury would have occurred if the patient had not sought treatment.

Finally, Plaintiffs contend that, while they filed a Petition to Establish a Medical Review Panel with the Louisiana Division of Administration to review their claim against PGL, they did so only "in an abundance of caution, and out of a prophylactic concern" that PGL would attempt to obtain dismissal of their claim prior to a substantive ruling on the merits, and such filing should not result in a finding that their claims against PGL must be submitted medical review panel because their claims are not for medical malpractice.[49]

Defendants argue that the LMMA applies to Plaintiffs' claims against PGL.[50] The LMMA covers "any unintentional tort or any breach of contract" brought against a "qualified healthcare provider," which includes both PGL and Doe, PGL's alleged employee who discarded the device.[51] The LMMA requires that covered claims must be submitted to a medical review panel before suit can be filed.[52] Covered claims that are not first brought before a medical review panel are subject to dismissal as premature.[53] Defendants contend that Plaintiffs must first submit their claims against PGL for review by a medical review panel before they can file suit; therefore,

---

[49] R. Doc. 13, p. 10 and *see* R. Doc. 7-2 (Plaintiffs' 1/31/24 Petition to Establish Medical Review Panel on Plaintiffs' claims against PGL and Doe).

[50] R. Doc. 19, ¶ 30. Defendants presented argument regarding the applicability of the LMMA in their Notices of Removal, but did not address the issue in their opposition to the Motion. *Compare* R. Docs. 1, 19 with R. Doc. 22 (Defendants' opposition memorandum, which argues that Plaintiffs' claim for intentional spoliation of evidence against PGL fails to state a claim because it cannot be brought until the underlying claim against Defendants is resolved in this case, and thus PGL is improperly joined and should be dismissed, resulting in complete diversity). *See also* R. Doc. 7 (PGL's Motion to Dismiss). Plaintiffs incorporate their arguments in opposition to PGL's Motion to Dismiss in their Motion. R. Doc. 20-1, p. 4. PGL's Motion to Dismiss is fully briefed and those arguments are properly considered in this Report.

[51] R. Doc. 19, ¶¶ 29-30, citing La. R.S. § 40:1231.1(A)(10).

[52] R. Doc. 19, ¶¶ 31-32, and citing La. R.S. 40:1231.8 ("A.(1)(a) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section…B.(1)(a)(i) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").

[53] R. Doc. 19, ¶ 32, citing *Richardson v. Adv. Cardiovascular Sys.*, 865 F. Supp. 1210, 1217 (E.D. La. 1994) (denying motion to remand, holding that plaintiff failed to first present medical malpractice claims before the medical review panel and, therefore, "plaintiff's claim must be dismissed as premature").

Plaintiffs' claim against PGL is premature.  On this basis, Defendants assert that PGL is improperly joined, and its citizenship should be disregarded.[54]

### C. Defendants Have Met Their Burden of Establishing That PGL Was Improperly Joined; Plaintiffs' Claims against PGL Fall Within the Scope of the LMMA and Are Premature

The parties are correct that, "[w]hen a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims."[55] "Federal courts applying state law 'look to the final decisions of that state's highest court.' When…the state's highest court has not decided an issue, this court must make an '*Erie* guess' as to how the state supreme court would decide the issue."[56] "In doing so, this court should 'defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise.'"[57]

No Louisiana Supreme Court cases have been identified on the issue of whether an intentional spoilation of evidence claim such as the Plaintiffs' must first be presented to a medical review panel. However, research for this Report revealed the Louisiana Third Circuit Court of Appeal's decision in *Brooks v. Christus Health Southwestern Louisiana,* which is instructive.[58] In *Brooks,* medical review panel proceedings were instituted by the plaintiffs, heirs of a deceased patient, against the patient's doctor and the hospital after the patient died following surgery. The

---

[54] R. Doc. 19, ¶¶ 32-34, citing *Flagg,* 819 F.3d 1332 [sic, 132], 137-138 (dismissing medical malpractice claims against the nondiverse defendant because the plaintiff could not establish a cause of action against that defendant at the time of removal, as the plaintiff failed to wait until the medical review panel issued its opinion before filing suit in violation of the LMMA).

[55] *Williams,* 2017 WL 3713529, at *3, citing *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, No. 10-684, 2013 WL 1296678, at *2 (M.D. La. March 28, 2013) (citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 Fed. Appx. 451, 453 (5th Cir. 2011) & *Erie R.R. Co.,* 304 U.S. at 78).

[56] *Guilbeau v. Hess Corp.,* 854 F.3d 310, 311–12 (5th Cir. 2017), citing *Temple v. McCall,* 720 F.3d 301, 307 (5th Cir. 2013) (other citations omitted).

[57] *Guilbeau,* 854 F.3d at 312, citing *Temple*, 720 F.3d at 307 (other citations omitted).

[58] 2006-1497 (La.App. 3 Cir. 4/4/07), 954 So.2d 393, 395, writ denied, 2007-0967 (La. 8/31/07), 962 So.2d 442.

doctor recommended an autopsy, which was not performed because the plaintiffs did not remit the required deposit. The failure to perform an autopsy was not raised in the medical review panel proceedings, which were concluded favorably to the providers. The plaintiffs then filed suit, alleging that the hospital had a duty to perform the autopsy, without which the cause of, and whether the hospital's conduct contributed to, the death could not be determined. Addressing the claim that the hospital failed its duty to perform an autopsy, the *Brooks* court held:

> We also note that the allegation that St. Patrick Hospital denied Plaintiffs' request for an autopsy was not presented to the medical review panel. While Plaintiffs have not termed it as such and have not made such an allegation in their petition, **this is essentially a spoliation of evidence claim which Plaintiffs have not properly presented** and are unable to assert as a bar to Defendant's properly supported motion for summary judgment.[59]

*Brooks* thus found that an intentional spoliation of evidence claim against a hospital for its failure to conduct an autopsy on a patient to determine cause of death following treatment was not properly presented if it had not first been raised during medical review panel proceedings. Notably, the Louisiana Supreme Court declined to review the *Brooks* decision. *Brooks* strongly indicates that Plaintiffs' spoliation claim must be raised before a medical review panel.[60]

---

[59] *Brooks,* 954 So.2d at 397 (emphasis added) (citing *Richardson,* 865 F.Supp. 1210).

[60] *See Richardson,* 865 F.Supp. at 1212, 1219 (where the plaintiff alleged that the doctor and the hospital "intentionally and with malice engaged in a cover-up scheme **which included disposing and/or altering records and other evidence**" of the plaintiff's deficient surgery, holding: "Whether defendants followed proper procedures or engaged in intentional acts of conspiracy to 'cover up' is fair grist for a medical review panel, well versed in the standard practices of a hospital and those persons working within it.") (emphasis added). *See also* the cases alleging that the failure of hospitals to maintain and/or dispose of defective devices prior to the treatment giving rise to the patients' injuries fall under the LMMA, *e.g., Fontenot v. Johnson & Johnson,* No. 10-162, 2010 WL 2541187, at *1, *6 (W.D. La. Apr. 30, 2010), report and recommendation adopted, No. 10-162, 2010 WL 2541178 (W.D. La. June 17, 2010) (where a patient died after being administered a "Duragesic" CII patch for pain, holding the plaintiffs' claims against the hospital for "negligent storing, maintenance, procuring, preserving, and inspection ... [and] failure to throw away expired and/or defective patches," were subject to the LMMA, citing *Richardson*) and *Porter v. Stryker Corp.*, No. CV 19-265, 2019 WL 3801635, at *1, *5 (W.D. La. Aug. 12, 2019) (where the patient sustained fractures in both knees after having a robotic-assisted knee replacement surgery via a faulty Mako system, holding that the patients' claims that the hospital "'failed in its duty owed plaintiff' as the owner and custodian responsible for ensuring the 'proper care, maintenance and performance of' the Mako system" were subject to the LMMA).

The LMMA defines "Malpractice," in pertinent part, as any "(1) unintentional tort or any breach of contract (2) based on health care or professional services rendered, or which should have been rendered, (3) by a health care provider (4) to a patient…."[61] When considering this definition, Plaintiffs' claim for spoliation against PGL constitutes malpractice.

First, PGL is a "health care provider," which is defined by the LMMA as including a "facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital…or an … employee… or agent thereof acting in the course and scope of his employment."[62]   PGL has offered evidence in support of its status as a health care provider, in the form of a certificate from the Louisiana Patient's Compensation Fund "certi[fying]" PGL as an "Enrollee" under La. R.S. § 40:1299.41 *et seq.* (now, La. R.S. § 40:1231.1, *et seq.*) during the period encompassing Plaintiffs' claim in this case, who has paid the Fund and obtained coverage.[63]

Plaintiffs contend the requirement that the malpractice be an "unintentional tort or breach of contract" is not met because they have alleged that PGL acted intentionally. However, "such charges [appear to be] attempts by plaintiffs to circumvent the confines of the Medical Malpractice Act. Use of the word 'intent' in the pleadings is not a talisman that can convert unsubstantiated negligence allegations into colorable claims of true intentional torts for purposes of fulfilling an

---

[61] R. Doc. 13, p. 7 citing La. R.S. § 40:1231.1(A)(13) (emphasis added by Plaintiffs).  Plaintiffs argue that the part of the definition that applies to "defects in or failures of prosthetic devices implanted in or used on or in the person of a patient" is not met because it applies to devices that are implanted in or used in the patient, and John's device was explanted at the time PGL had it.  While this argument may have merit, it is not be reached because that portion of the definition is an example, but not a requirement, for a finding that an act is malpractice.

[62] La. R.S. § 40:1231.1(A)(10). This is not disputed by Plaintiffs.

[63] R. Doc. 7-3.  La. R.S. § 40:1231.2 E.(1) provides: "Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider…."

intentional tort exception to controlling legislation."[64] Rather than be "swayed by semantic manipulations," a "piercing [of] the veil" is necessary.[65] "An intentional tort requires that the provider either: '(1) consciously desires the physical result of his act[;] or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.' However, something more than a conclusory allegation of intentional conduct is required. '[T]he mere invocation of the word 'intentional' will not create a cause of action.'"[66] In *Morrow v. Louisiana Medical Mutual Insurance Company*, Louisiana's First Circuit Court of Appeal held that the plaintiff's allegations that her provider failed to advocate for her, failed to provide the care she needed, failed to supervise staff, failed to treat her, and failed to properly perform procedures, were insufficient to show that the provider engaged in intentional acts.[67] Here, as in *Morrow,* Plaintiffs generally complain that Doe failed to follow instructions and discarded the prothesis, and PGL failed to properly supervise and/or train Doe.[68] Considering the Petition as a whole, Plaintiffs' allegations regarding intentional acts are conclusory, and do not contain specific facts supporting the assertion that Doe/PGL's discarding of the device was an intentional tort. Plaintiffs' allegations of intentional conduct are also directly contradicted by their filing of a Petition to

---

[64] *Richardson,* 865 F.Supp. at 1218–19.

[65] *Id.* at 1218.

[66] *Morrow v. Louisiana Med. Mut. Ins. Co.,* 2022-1006 (La.App. 1 Cir. 2/24/23), 361 So.3d 986, 990 (failure to remove wire from the plaintiff's chest after surgery was medical malpractice covered by the LMMA, notwithstanding the plaintiff's claims of "gross negligence," "willful misconduct," and/or "intentional tort"), citing *Bazley,* 397 So.2d at 481 and *Butler-Bowie v. Olive Branch Senior Care Center,* 52,520 (La.App. 2 Cir. 2/27/19), 266 So.3d 478, 484-85.

[67] 361 So.3d at 990.

[68] R. Doc. 1-2, ¶¶ 5, 8.  *See also Lockwood v. Our Lady of the Lake Hosp., Inc.,* No. 17-00509, 2018 WL 3451514, at *4 (M.D. La. July 17, 2018) (Dick, C. J.) (where a hospital failed to provide the plaintiff with an sign language interpreter, finding that allegations claiming that "defendant's conduct is based on intentional acts of discrimination…[t]he injuries sustained by Mr. Lockwood are substantially certain to follow when a hospital fails to provide deaf persons with effective communication…[and] [t]he injuries sustained by Mr. Lockwood are the expected consequence of the hospital's failure to comply with the requirements and mandates of the ADA and the LCHR," were conclusory allegations insufficient to plead intentional conduct falling outside of the LMMA).

Establish Medical Review Panel under the LMMA to hear their claims against PGL, which further suggests that their claims are for negligence.[69]

The second and fourth provisions, which are that the alleged unintentional tort "is based on health care or professional services rendered, or which should have been rendered… to a patient," are the provisions primarily contested by Plaintiffs, and they overlap.  The LMMA defines "health care" as follows: "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's **medical care, treatment, or confinement**…."[70]  "Patient" means "a natural person… who receives or should have received health care from a licensed health care provider, under contract, expressed or implied."[71]

Plaintiffs argue that PGL's discarding of the device, two days after it was removed from John's body, did not occur while "health care" was being provided "during" John's treatment.  However, Plaintiffs construe "health care," and the circumstances of PGL's possession of the device, too narrowly.  PGL performed a post-operative professional pathological diagnosis of a tumor from John's hip and the device on the orders of John's treatment provider, Dr. Jared Braud.[72]  PGL received the device and rendered a diagnosis,[73] and then allegedly discarded the device,

---

[69] R. Doc. 7-2.  Notably, per La. R.S. §40:1231.8 B(1)(a)(i) ("No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."), Plaintiffs are precluded from commencing a lawsuit until the medical panel review process, which they have invoked, is complete.  *See Esposito v. Ethicon, Inc.,* No. 11-207, 2011 WL 2883067, at *4 (M.D. La. June 13, 2011), report and recommendation adopted, No. 11-207, 2011 WL 2883342 (M.D. La. July 15, 2011) (holding that, because the medical panel review proceedings instituted via the plaintiff's pre-removal request were not complete, the plaintiff could not legally bring an action in any court against her provider, who was improperly joined) (citing No. 10–190, *Owens v. Ethicon,* 2010 WL 3172737 (M.D. La. Aug. 11, 2010) and No. 09-949, *Ellis v. Ethicon,* 2010 WL 1251640 (M.D .La. Feb. 19, 2010)).

[70] La. R.S. § 40:1231.1(A)(10) (emphasis added).

[71] La. R.S. § 40:1231.1(A)(15).

[72] R. Doc. 1-2, p. 7, ¶ 5 (John's revision surgery was performed by Dr. Jared Breaud [sic, Braud]) and *see* R. Doc. 12-1, p. 1 (pathology requested by Jared L. Braud, M.D.).

[73] R. Doc. 13-1, p. 1 (Surgical Pathology Report, noting "Final Pathologic Diagnosis").

giving rise to Plaintiffs' claims.  In *Delcambre v. Blood Systems, Inc.,* the Louisiana Supreme Court discussed the parameters of "medical care, treatment, or confinement" as referred to in the definition of "health care" under the LMMA, in a case involving a botched phlebotomy of a patient who voluntarily donated blood.  In determining whether the patient received "medical care" (and thus, health care) from the provider so as to come under the LMMA, the court looked to whether the patient relied on the provider for a diagnosis.  In that case, the court held that the patient "was not receiving any 'medical care' from [the provider] at the time of the donation, since he was not relying upon [the provider] to diagnose or inform him of any physical condition of which he may have been unaware."[74]  Here, however, PGL was being relied on for a diagnosis of John's condition and the device, which was medical care rendered on behalf of John, PGL's patient (albeit indirectly).  PGL's subsequent discarding of the device post-diagnosis also falls under "health care" as "any act or treatment … **which should have been performed or furnished**, by any health care provider for, to, or on behalf of a patient during the patient's medical care…" as Plaintiffs claim PGL should have retained the device on their behalf.  Based on the definitions of malpractice and health care, Plaintiffs' allegations fall under the LMMA.[75]

Further guidance for determining whether a claim alleges "malpractice" within the scope of the LMMA is provided by the factors handed down by the Louisiana Supreme Court in *Coleman v. Deno*.[76]  "These factors, not one of which is either necessary or sufficient," include: (1) whether

---

[74] *Delcambre v. Blood Systems, Inc.,* No. 2004-0561 (La. 1/19/05), 893 So.2d 23, 28-29.  In so holding, the court considered *Price v. City of Bossier City,* 96–2408 (La. 5/20/97), 693 So.2d 1169, in which a provider was allegedly negligent in collecting and interpreting a drug test required by the patient's employer.  *Price* held that the patient did not receive "medical care" under the LMMA because "she was not relying upon the defendants to diagnose a physical or medical condition of which she was unaware."

[75] *See also* Plaintiffs' Petition to Establish Medical Review Panel, which alleges "A cause of the incident and resulting injuries to complainants was the **substandard care** and conduct of defendants…, [c]omplainants allege that, due to the **sub-standard care** and conduct of defendants [PGL and Doe], [John] sustained damages…." R. Doc. 7-2, pp. 2-3 (emphasis added).

[76] 813 So.2d at 315-16.

the particular wrong is "treatment related" or caused by a dereliction of professional skill, (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, (3) whether the pertinent act or omission involved assessment of the patient's condition, (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, (5) whether the injury would have occurred if the patient had not sought treatment, and (6) whether the tort alleged was intentional.[77] Factors one, three, four and five weigh in favor of finding that the LMMA applies to Plaintiffs' claims for the same reasons explained, above; specifically, PGL's discarding of the device was related to PGL's treatment of John in rendering a pathologic diagnosis, which Plaintiffs allege to have been committed in dereliction of PGL's professional skills;[78] PGL's possession and diagnosis of the device involved assessment of the device and John's condition, and its discarding of the device was an omission; PGL's diagnosis and duty to retain the device occurred in the context of a physician-patient relationship and was within the scope of pathology activities PGL was hired to perform;  PGL's discarding of the device would not have occurred but for John, through the hospital, retaining PGL to diagnose John's condition and the device.[79] The parties have not substantively addressed whether expert medical evidence may be required to determine

---

[77] *Taylor v. Ochsner Clinic Found.,* No. 11-1926, 2011 WL 6140885, at *6 (E.D. La. Dec. 9, 2011), citing *Coleman*, 813 So.2d at 315-16.

[78] *See, e.g., Taylor,* 2011 WL 6140885, at *5, citing *Cashio v. Baton Rouge General Hospital,* 378 So.2d 182, 183 (La.App. 1 Cir. 1979) (where the patient died from a staph infection acquired during a coronary bypass operation, holding, "Despite plaintiffs' contentions that injuries resulted not from health care or professional services rendered, but from negligent performance of duties owed as a premises owner, the [Cashio] court held that although 'the term 'Treatment' is not defined in the Act we cannot agree with plaintiffs' limited and very selective definition as being only those immediately entailed in coronary by-pass surgery.' Thus, a hospital's duties associated with 'treatment' of its patients includes 'the furnishing of a clean and sterile environment for all patients….'") (and citing *Esposito,* 2011 WL 2883067, at *1 (patient's wound infection arising from contaminated post-operative sutures, and allegation that the hospital failed to remove them from its facilities, was covered by the LMMA). Here, Plaintiffs allege that PGL's duties associated included retention of the device per instruction).

[79] The sixth factor, whether the act was intentional, is discussed above.

whether the appropriate standard of care was breached when the device was discarded, so it is not clear in whose favor the fifth factor weighs. In any case, no factor is dispositive and the applicability of the other four factors outweighs a single factor.[80]  For all the foregoing reasons, the LMMA applies to Plaintiffs' claims against PGL (and Doe).

Notably, the parties agree that "[t]he LMMA provides in relevant part that '[n]o action against a health care provider ... may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel'…[and, in the absence of a waiver, which is not present here] 'the plaintiff's suit must be dismissed' without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit."[81]  While Plaintiffs have already requested that a panel be established, the Fifth Circuit also noted in *Flagg* that "[t]he Supreme Court of Louisiana has interpreted this provision [*i.e.*, the request for a medical review panel] to not only require the plaintiff to *present* the claim to a medical review panel, but also to wait until 'the panel has *rendered its expert opinion* on the merits of the complaint' before filing suit.[82] "Federal courts adjudicating Louisiana law claims recognize and enforce the LMMA's procedural prerequisite to

---

[80] Plaintiffs' authority is distinguishable.  *See* R. Doc. 13, pp. 6, 9, citing *LaCoste*, 966 So.2d at 525-29 (finding that wrongful death claim due to hospital's failure to have a proper evacuation plan during a natural disaster and failure to prevent flood waters from entering the hospital did not fall under the LMMA, as the bulk of the *Coleman* factors weighed in favored of general negligence, particularly because the plaintiff's allegations related to the deficient design of the hospital, including lack of emergency power, and were not related to medical treatment) and *Rivera*, 97 So.3d at 1102-03 (finding that a patient's claim of injury due to falling out of wheelchair not equipped with a safety strap or seatbelt while riding in a van during transport was not covered by the LMMA because it was not related to treatment or caused by a dereliction of professional skill, did not require medical evidence, was not related to a physician-patient relationship, and did not involve the handling of a patient, but rather, involved whether the equipment provided to the patient during her transport was sufficient to ensure her safety).  *See also Williams*, 2017 WL 3713529 at *8 (distinguishing *Rivera*).

[81] *Flagg,* 819 F.3d at 137–38, citing La. R.S. § 40:1231.8(B)(1)(a)(i) (other citations omitted). *See* R. Doc. 13, p. 6 ("Plaintiffs acknowledge that an action against a health care provider may be premature and subject to dismissal, without prejudice, pursuant to La. Code of Civ. Proc. art. 933(A). Plaintiffs further acknowledge that LA. REV. STAT. § 40:1231.8(B)(1)(a)(i) provides that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.") and R. Doc. p. 19, ¶¶ 31-33.

[82] 819 F.3d at 137–38, citing *Delcambre,* 893 So.2d at 27 (emphasis added in *Flagg*). *See also Lockwood,* 2018 WL 3451514, at *3 (same).

suit."[83] Accordingly, since the LMMA applies to Plaintiffs' claims and there is no evidence indicating that the medical panel requested by Plaintiffs has rendered an opinion, Plaintiffs' claims against PGL (and Doe) should be dismissed as premature, *i.e.,* these parties are improperly joined.[84]

## III.    RECOMMENDATION

Plaintiffs' claims against PGL (and its employee, John Doe) are subject to Louisiana's Medical Malpractice Act, which proceedings have been initiated but are not complete. Accordingly, PGL (and Doe) have been improperly joined and must be dismissed from this suit. With PGL (and Doe) dismissed, complete diversity exists.  Because amount in controversy has also been established, Plaintiffs' Motion to Remand for lack of diversity subject matter jurisdiction should be denied. Further, as dismissal of Plaintiffs' claims against PGL is recommended, PGL's Motion to Dismiss is moot.

Accordingly,

**IT IS RECOMMENDED** that the Motion for Remand, filed by Plaintiffs John G. Daniel and Lynnita Daniel, be **DENIED.**[85]

**IT IS FURTHER RECOMMENDED** that the nondiverse Defendants Pathology Group of Louisiana and John Doe be **DISMISSED WITHOUT PREJUDICE** because Plaintiffs' claims

---

[83] *Lockwood,* 2018 WL 3451514, at *3 (citations omitted).

[84] *See Williams,* 2017 WL 3713529, at *3 ("Unless the parties have waived the panel review requirements, 'the plaintiff's suit must be dismissed' without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit.' *Flagg,* 819 F.3d at 138… Accordingly, where a plaintiff fails to exhaust his claims as required by the LMMA, such claims are subject to dismissal and a defendant entitled to panel review is considered to be improperly joined. *Id.* at 139 ('Because Flagg did not complete the medical panel review process before filing suit, the LMMA explicitly prohibited him from suing the Medical Defendants in any court. Thus, Flagg had no possibility of recovery against the Medical Defendants, and the district court correctly dismissed the Medical Defendants as improperly joined.'"))(internal citation omitted).  There is no evidence that the parties have waived the panel review requirements.

[85] R. Doc. 20.

against them are covered by the Louisiana Medical Malpractice Act, and Plaintiffs did not complete the medical review process under the LMMA as to PGL and/or Doe before filing suit.

**IT IS FURTHER RECOMMNENDED** that Defendant Pathology Group of Louisiana's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim be **TERMINATED AS MOOT.**[86]

**IT IS FURTHER RECOMMNENDED** that, if the Report and Recommendations are adopted, this matter be referred to the magistrate judge for a scheduling conference.[87]

Signed in Baton Rouge, Louisiana, March 3, 2025.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[86] R. Doc. 7.

[87] The scheduling conference was deferred for good cause pending resolution of the Motion to Remand. R. Doc. 21.